1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| Poetry Corporation, | ) CV 14-01787 RSWL (JPRx) |
| Plaintiff, | ) |
| | ) **ORDER RE: DEFENDANTS'** |
| v. | ) **MOTION TO DISMISS** |
| | ) **COMPLAINT PURSUANT TO** |
| | ) **FEDERAL RULE OF CIVIL** |
| Conway Stores, Inc.; CW | ) **PROCEDURE 12(b)(2)** [61] |
| Operating, LLC; Metro | ) |
| Buying Group, LLC; and Does | ) |
| 1-10 inclusive, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

     Currently before the Court is Defendants Conway

Stores Inc. ("Conway"), CW Operating, LLC ("CWO"), and

Metro Buying Group, LLC's ("Metro") (collectively,

"Defendants") Motion to Dismiss Complaint Pursuant to

Fed. R. Civ. P. 12(b)(2) [61].  The Court, having

reviewed all papers submitted pertaining to this

Motion, **NOW FINDS AND RULES AS FOLLOWS:** The Court

**DENIES** Defendants' Motion.

//

# I. BACKGROUND

**A.   Factual Background**

Plaintiff Poetry Corporation ("Plaintiff") is a California corporation in the business of selling wholesale garments, with its principal place of business in the County of Los Angeles, California. Compl. ¶ 1.  Defendant Conway is a New York corporation with its principal place of business in the state of New York.  Id. at ¶ 2.  Defendant CWO is a New York limited liability company with its principal place of business in New York.  Id. at ¶ 3.  Defendant CWO did business under the fictitious business name, "CW Price, LLC" in California.  Id.  Defendant Metro is a New York limited liability company with its principal place of business in the state of New York.  Id. at ¶ 4. Defendants CWO and Metro are affiliated and/or have a parent-subsidiary relationship.  Id. at ¶ 5. Defendants CWO and Metro are affiliates and/or subsidiaries of Defendant Conway.  Id.

Plaintiff alleges that on or about July 1, 2013, Plaintiff entered into a series of contracts with Defendants to sell and deliver garments to Defendants. Id. at ¶ 16.  Plaintiff alleges that, while it performed all conditions, covenants, obligations, and promises under the contracts, it has not been paid for the sum owed.  Id. at ¶¶ 17-18.  As a result of Defendants' breach, Plaintiff asserts four causes of action against Defendants: (1) breach of contract, (2)

open book account, (3) account stated, and (4) unjust
enrichment - constructive trust.  Plaintiff asserts
that it is entitled to recover the principal sum of
$336,656.40, plus interest.  Id. at ¶¶ 19-28.
Plaintiff also requests an order from the Court
declaring that all unpaid goods remaining in the
possession, custody, and control of Defendants are held
by the Defendants in constructive trust for the benefit
of Plaintiff.  Id. at ¶ 28.  Plaintiff also requests an
order that Defendants reconvey said goods to Plaintiff.
Id.

**B.   Procedural Background**

   Plaintiff filed its Complaint on March 11, 2014
[1].  On April 26, 2014, Plaintiff filed a Request for
Clerk to Enter Default against Defendants [24, 25, 26].
The Court entered default as to all Defendants on May
5, 2014 [29].  On May 20, 2014, Defendants filed a
Motion to Dismiss for Lack of Jurisdiction [34], which
the Court struck because default had already been
entered against Defendants [35].

   On June 3, 2014, Defendants filed a Motion to
Vacate Entry of Default [39], which the Court granted
[57].  Defendants filed the instant Motion to Dismiss
Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) on July
18, 2014 [61].  Plaintiff filed an Opposition on July
29, 2014 [65] and Defendants filed their Reply on
August 4, 2014 [67].  This matter was set for hearing
on August 19, 2014 and was taken under submission on

1  August 15, 2014 [68].

2  **II.  LEGAL STANDARD**

3  **A.  Motion to Dismiss Pursuant to Fed. R. Civ. P.**

4  **12(b)(2)**

5      Pursuant to Federal Rule of Civil Procedure

6  12(b)(2), a district court cannot proceed against a

7  defendant over which it lacks personal jurisdiction

8  unless that defendant has waived the requirement.  <u>See</u>

9  <u>Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites</u>

10 <u>de Guinee</u>, 456 U.S. 694, 702-03 (1982).  Because no

11 applicable federal statute governs jurisdiction in this

12 case, California personal jurisdiction law applies.

13 <u>See</u> <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316,

14 1320 (9th Cir. 1998).  The exercise of personal

15 jurisdiction over a nonresident defendant requires the

16 presence of two factors: (1) California's laws must

17 provide a basis for exercising personal jurisdiction,

18 and (2) the assertion of personal jurisdiction must

19 comport with due process.  <u>Hirsch v. Blue Cross, Blue</u>

20 <u>Shield of Kansas City</u>, 800 F.2d 1474, 1477 (9th Cir.

21 1986).  California's long arm statute permits the

22 exercise of personal jurisdiction to the fullest extent

23 permitted by due process.  <u>See</u> Cal. Civ. Proc. Code §

24 410.10; <u>Panavision</u>, 141 F.3d at 1320.  "Because

25 California's long-arm jurisdictional statute is

26 coextensive with federal due process requirements, the

27 jurisdictional analyses under state law and federal due

28 process are the same."  <u>Schwarzenegger v. Fred Martin</u>

4

1  *Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004).  Thus,
2  only a due process analysis is required here.

3      Due process requires that a defendant have "certain
4  minimum contacts with [the forum state] such that the
5  maintenance of the suit does not offend traditional
6  notions of fair play and substantial justice."  Int'l
7  Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)
8  (internal quotation marks omitted).  The plaintiff
9  bears the burden of proving that each defendant has
10 sufficient minimum contacts with the forum state that
11 warrant the court's exercise of personal jurisdiction.
12 Harris Rutsky & Co. Ins. Servs., Inc. v. Bell &
13 Clements Ltd., 328 F.3d 1122, 1130 (9th Cir. 2003)
14 ("Personal jurisdiction over each defendant must be
15 analyzed separately."); Rio Props., Inc. v. Rio Int'l
16 Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002).
17 Depending on the nature and scope of the defendant's
18 contacts with the forum, jurisdiction may be general or
19 specific to a cause of action.  Roth v. Garcia Marquez,
20 942 F.2d 617, 620 (9th Cir. 1991).

21      When a defendant's contacts with the forum state
22 are "substantial" or "continuous and systematic,"
23 general jurisdiction may be exercised over that
24 defendant for any cause of action, even if it is
25 unrelated to the defendant's activities within the
26 forum state.  Schwarzenegger, 374 F.3d at 801–02; Data
27 Disc, Inc. v. Sys. Tech. Assocs., 557 F.2d 1280, 1287
28 (9th Cir. 1977).  In cases where a defendant's contacts

1   are insufficient to support an exercise of general
2   jurisdiction, more limited specific jurisdiction may be
3   found where a cause of action arises out of or is
4   related to the defendant's activities in the forum
5   state.   Burger King Corp. v. Rudzewicz, 471 U.S. 462,
6   472–73 (1985); Ballard v. Savage, 65 F.3d 1495, 1498
7   (9th Cir. 1995).   "Specific jurisdiction may be
8   exercised with a lesser showing of minimum contacts
9   than is required for the exercise of general
10  jurisdiction."   ACORN v. Household Int'l, Inc., 211 F.
11  Supp. 2d 1160, 1164 (C.D. Cal. 2002).   The Ninth
12  Circuit uses a three-part test to determine whether
13  there is specific jurisdiction over a defendant: (1)
14  the defendant either purposefully directed its
15  activities at the forum or purposefully availed itself
16  of the privilege of conducting activities in the forum;
17  (2) the plaintiff's claim arises out of or results from
18  the defendant's forum-related activities; and (3) the
19  court's exercise of personal jurisdiction over the
20  defendant is reasonable.   Boschetto v. Hansing, 539
21  F.3d 1011, 1016 (9th Cir. 2008).

22      As to the first prong, the Ninth Circuit generally
23  uses a purposeful direction analysis when an action
24  sounds in tort, whereas it uses a purposeful availment
25  analysis when an action sounds in contract.   Wash. Shoe
26  Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 672–73,
27  n.2 (9th Cir. 2012).

28                          6

"When a district court acts on a defendant's motion to dismiss under Rule 12(b)(2) without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." <u>Ballard</u>, 65 F.3d at 1498.  In order to make a prima facie showing, the plaintiff must produce admissible evidence, which, if believed, would be sufficient to establish the Court's personal jurisdiction.  <u>Enriquez v. Interstate Grp., LLC</u>, No. 11-CV-05155 YGR, 2012 WL 3800801, at *3 (N.D. Cal. Aug. 31, 2012).  Accordingly, a district court is to take uncontroverted allegations in the complaint as true.  <u>AT&T Co. v. Compagnie Bruxelles Lambert</u>, 94 F.3d 586, 588 (9th Cir. 1996).  However, "mere allegations of the complaint, when contradicted by affidavits, are [not] enough to confer personal jurisdiction of a nonresident defendant.  In such a case, facts, not mere allegations, must be the touchstone." <u>Taylor v. Portland Paramount Corp.</u>, 383 F.2d 634, 639 (9th Cir. 1967).  <u>See</u> <u>also</u> <u>Chem Lab Prods., Inc. v. Stepanek</u>, 554 F.2d 371, 372 (9th Cir. 1977); <u>Cummings v. W. Trial Lawyers Ass'n</u>, 133 F. Supp. 2d 1144, 1154 (D. Ariz. 2001).  Parties may go beyond the pleadings and support their positions with discovery materials, affidavits, or declarations.  <u>Am. Inst. of Intradermal Cosmetics, Inc. v. Soc'y of Permanent Cosmetic Prof's</u>, No. CV 12-06887 GAF JCGX, 2013 WL 1685558, at *4 (C.D. Cal. Apr.

7

16, 2013).  "[C]onflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." <u>AT&T</u>, 94 F.3d at 588.  "At the same time, however, the plaintiff must submit *admissible* evidence in support of its prima facie case."  <u>Id.</u> (emphasis added).

## III. ANALYSIS

### A.  Request for Judicial Notice

As a preliminary matter, Defendants request that the Court take judicial notice of a memorandum issued by Judge Dale S. Fischer in <u>Urban Textile, Inc. v. Conway Stores, Inc., et al.</u>, Case No. CV 14-2438 DSF (AJWx).  Defs.' Request for Judicial Notice ("RJN"), Ex. 1.

Plaintiff also requests that the Court take judicial notice of: (1) the docket and Answer of Conway Stores, Inc. in <u>Gold Value Int'l v. Conway Stores</u>, Case No. CV-14-00986-PA-SS; (2) the docket of <u>Unicolors v. Conway Stores</u>, Case No. CV-07-03763-ABC-RC; (3) the docket and Answer of Conway Stores, Inc. in <u>Meridian Textiles v. Conway Stores</u>, Case No. CV 13-04535-RGK-PJW; and (4) the Opinion of the Tax Court of New Jersey in <u>Morris Cohen v. Director of Taxation Division</u>, Case No. 000385-2009.  Pl.'s RJN, Exs. 1-4.

Because the documents are not subject to reasonable dispute and are capable of accurate and ready

1  determination by resort to sources whose accuracy
2  cannot reasonably be questioned (see Lee v. City of
3  L.A., 250 F.3d 668, 689 (9th Cir. 2001)), the Court
4  **GRANTS** the Parties' respective Requests for Judicial
5  Notice.

6  **B.  General Jurisdiction**

7      "A defendant whose contacts with a state are
8  'substantial' or 'continuous and systematic' can be
9  haled into court in that state in any action, even if
10  the action is unrelated to those contacts." Bancroft &
11  Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082,
12  1086 (9th Cir. 2000) (citing Helicopteros Nacionales de
13  Colombia, S.A. v. Hall, 466 U.S. 408, 415 (1984)).
14  "This is known as general jurisdiction." Id.  "The
15  standard for general jurisdiction 'is an exacting
16  standard, as it should be, because a finding of general
17  jurisdiction permits a defendant to be haled into court
18  in the forum state to answer for any of its activities
19  anywhere in the world.'" Mavrix Photo, Inc. v. Brand
20  Techs., Inc., 647 F.3d 1218, 1224 (9th Cir. 2011)
21  (quoting Schwarzenegger, 374 F.3d at 801).

22      "To determine if a defendant's activities within
23  the forum are 'continuous and systematic' or
24  'substantial,' the court must examine all of its
25  activities impacting the state." Barantsevich v. VTB
26  Bank, 954 F. Supp. 2d 972, 983 (C.D. Cal. 2013).
27  "Factors to be taken into consideration are whether the
28                              9

1  defendant makes sales, solicits or engages in business
2  in the state, serves the state's markets, designates an
3  agent for service of process, holds a license, or is
4  incorporated there." <u>Bancroft</u>, 223 F.3d at 1086
5  (citing <u>Hirsch</u>, 800 F.2d at 1478).

6      "[D]etermining whether a corporate defendant's
7  contacts in a particular case are substantial and
8  continuous turns on the 'economic reality of the
9  defendants' activities rather than a mechanical
10  checklist.'" <u>Tuazon v. R.J. Reynolds Tobacco Co.</u>, 433
11  F.3d 1163, 1173 (9th Cir. 2006) (citing <u>Gates Learjet</u>
12  <u>Corp. v. Jensen</u>, 743 F.2d 1325, 1331 (9th Cir. 1984)).

13      Plaintiff argues that the Court has general
14  jurisdiction over Defendants because (1) Defendants
15  have attended several trade shows in Los Angeles in the
16  past several years, (2) Defendants have subjected
17  themselves to jurisdiction in California courts in
18  other actions, and (3) Defendants were purportedly
19  purchased by National Stores, Inc., a California
20  entity.  Opp'n 12:10-14:7.

21      The Court finds that such is insufficient to make a
22  finding of general jurisdiction over Defendants.[1] First,

23

24      [1] The Court recognizes that personal jurisdiction over each
25  Defendant must be analyzed separately.  <u>Harris Rutsky</u>, 328 F.3d
    at 1130.  Here, however, Defendants have admitted that, while
26  they constitute three separate legal entities, they are all owned
    and/or managed by the same parties, and that they previously
27  shared the same offices and are operating their businesses in
    conjunction with one another.  Defs.' Notice of Mot.  As

28                                    10

1  the fact that Defendants have attended several trade
2  shows in Los Angeles is not a contact that would be
3  considered systematic and continuous.  See The Hillman
4  Group, Inc. v. Hy-Ko Products Co., No. CV
5  07-2446-PHX-JAT, 2008 WL 3583253, at *5 (D. Ariz. Aug.
6  13, 2008).  Further, Plaintiff fails to provide any
7  argument or case authority supporting how Defendants'
8  failure to contest personal jurisdiction in other cases
9  or National Stores, Inc.'s purported purchase of
10 Defendants[2] support a finding of general jurisdiction in
11 this Action.  Indeed, Defendants' principal places of
12 business are in New York (Compl. ¶¶ 2-4), and they do
13 not have a physical address, telephone number, or
14 facsimile listing in California (Cohen Decl. ¶ 13).
15 Plaintiff does not allege that Defendants are
16 incorporated in California or have any agent for
17 service of process, offices, stores, bank accounts,
18 personal or real property, or telephone listings in
19 California.
20     Given the stringent standard for general
21 jurisdiction and Plaintiff's lack of support to make
22 such a finding, the Court finds that Plaintiff has
23
24 _____
   Defendants admit that they are all intertwined and are one and
25 the same, the Court's analysis of personal jurisdiction applies
   equally to each Defendant.  See id., see also Defs.' Mot. 2:27-
26 3:4.
27     [2] Defendants also appear to dispute that Defendants were
   ever purchased by National Stores, Inc.  See Reply 2:7-10.
28                                11

1  failed to meet its burden in showing that Defendants'
2  contacts "approximate physical presence" in the forum.
3  See Bancroft, 223 F.3d at 1086.  The Court thus finds
4  that it lacks general jurisdiction over Defendants.
5  **C.  Specific Jurisdiction**
6       Specific jurisdiction is proper only when (1) the
7  defendant has performed some act by which he
8  purposefully avails himself of the privilege of
9  conducting activities in the forum, thereby invoking
10  the benefits and protections of its laws; (2) the claim
11  arises out of, or results from, the defendant's forum-
12  related activities; and (3) the exercise of
13  jurisdiction is "reasonable."  Terracom v. Valley Nat'l
14  Bank, 49 F.3d 555, 560 (9th Cir. 1995) (citing Shute v.
15  Carnival Cruise Lines, 897 F.2d 377, 381 (9th Cir.
16  1990)).
17       The plaintiff bears the burden of satisfying the
18  first two prongs of the test.  Schwarzenegger, 374 F.3d
19  at 802 (citing Sher v. Johnson, 911 F.2d 1357, 1361
20  (9th Cir. 1990)).  If the plaintiff fails to satisfy
21  either of these prongs, personal jurisdiction is not
22  established in the forum state.  Id.  If the plaintiff
23  succeeds in satisfying both of the first two prongs,
24  the burden then shifts to the defendant to "present a
25  compelling case" that the exercise of jurisdiction
26  would not be reasonable.  Id.
27       1.  Purposeful Availment
28                          12

Considering the first prong of the Ninth Circuit's specific jurisdiction test (Boschetto, 539 F.3d at 1016), the Court must determine whether a purposeful direction or purposeful availment analysis of Defendants' conduct is appropriate. See Wash. Shoe Co., 704 F.3d at 672-73. The Ninth Circuit noted that although the phrase "purposeful availment" was historically used in shorthand fashion to include both "purposeful availment" and "purposeful direction," "availment and direction are, in fact, two distinct concepts." Schwarzenegger, 374 F.3d at 802. "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." Id. (internal citations omitted); Wash. Shoe Co., 704 F.3d at 672.

Here, Plaintiff has asserted claims for breach of contract, open book account, account stated, and unjust enrichment. Plaintiff relies on a series of contracts, consisting of purchase orders, between the Parties as the basis for its claims. See Compl. ¶¶ 16-19, 21, 24-25, 27. Furthermore, Plaintiff's claims for open book account, account stated, and unjust enrichment all stem from Defendants' purported failure to pay the $336,656.40 that was due under the Parties' contracts. Because Plaintiff's claims arise out of Defendants' purported failure to pay Plaintiff for the sum owed

under a series of contracts, the Court finds that this Action sounds primarily in contract.  As such, the first prong is analyzed under the "purposeful availment" standard.  <u>See</u> <u>Repwest Ins. Co. v. Praetorian Ins. Co.</u>, 890 F. Supp. 2d 1168, 1188 (D. Ariz 2012) ("In cases arising out of contractual relationships, including those involving related tort claims, the Ninth Circuit applies the "purposeful availment" test).

On balance, the Court finds that Defendants purposefully availed themselves of the privilege of conducting activities in California.  The purposeful availment analysis considers "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether the defendant "purposefully established minimum contacts within the forum."  <u>Amini Innovation Corp. v. JS Imports, Inc.</u>, 497 F. Supp. 2d 1093, 1103 (C.D. Cal. 2007) (citing <u>Burger King</u>, 471 U.S. at 479).  Here, Plaintiff presents evidence that Defendants' representatives have physically traveled to California to conduct business and consummate transactions with Plaintiff over the past several years.  In particular, Plaintiff provides a declaration from Shannon Chon, its Chief Financial Officer ("CFO"), in which she details the way the Parties conducted business over the past ten years.

14

Chon Decl. ¶ 7.  According to Ms. Chon, Defendants'
representatives traveled to Plaintiff's premises in Los
Angeles, California on a monthly basis to review
merchandise, negotiate transactions, and place orders
for purchase of garments.[3]  Id.  On almost every
occasion, these representatives would hand fill and
sign purchase orders at the Los Angeles, California
location.  Id.  Plaintiff specifically identifies these
representatives as: (1) Mary Ryan (a buyer for
Defendants), (2) Barbara Weiner (a buyer for
Defendants), (3) Morris Cohen (a principal and officer
of Defendants), (4) Suzanne Swain (a buyer for
Defendants), and (5) Mary Harmon (Defendants'
merchandise manager).  Id.  After receiving the
purchase orders, Plaintiff would ship the orders to
Defendants from Los Angeles, California.  Id. at ¶ 8.

    Defendants here did more than sign a single, short-
term contract with Plaintiff; rather, the Parties'
relationship lasted at least ten years.  Chon Decl. ¶
3.  During that time period, Defendants engaged in

_____

    [3] Contrary to Plaintiff's claims, Defendants assert that
they bought the goods in question from their New York office (and
not from California) and refers the Court to the purchase orders
attached to the Complaint.  Mot. 1:26-2:1.  However, the Court
disregards Defendants' claims.  First, as discussed above,
"conflicts between the facts contained in the parties' affidavits
must be resolved in [the plaintiff's] favor for purposes of
deciding whether a prima facie case for personal jurisdiction
exists."  AT&T, 94 F.3d at 588.  Moreover, Defendants do not cite
to any part of any declaration or other evidence that the goods
in question were ordered by them from their New York office.

15

affirmative conduct in the forum by sending over their
representatives to California, where they personally
selected different garments and signed purchase orders
for the same.  See Hirsch, 800 F.2d at 1478 ("The
purposeful availment analysis turns upon whether the
defendant's contacts are attributable to 'actions by
the defendant himself,' or conversely to the
'unilateral activity of another party.'").  By engaging
in such affirmative conduct, Defendants clearly
promoted the transaction of business within California.
See Ballard, 65 F.3d at 1498-99 (holding that the
purposeful availment requirement is satisfied if the
defendant has taken deliberate action with the forum
state or created continuing obligations to forum
residents); See Data Disc, Inc. v. Sys. Tech. Assocs.,
Inc., 557 F.2d 1280, 1287-88 (9th Cir. 1977) ("By
participating in the contract negotiations in [the
forum state], [Defendant] purposefully availed itself
of the privilege of carrying out activities in that
state.").  Thus, in looking at the Parties' course of
dealing, the Court finds that Defendants engaged in
affirmative conduct sufficient to satisfy the
purposeful availment requirement.

     In an attempt to show that they did not
purposefully avail themselves of the forum state,
Defendants allege that they did not "expressly aim at
California" or cause "harm that [they] knew was likely

to be suffered in the State."  Mot. 10:3-8.  In support
thereof, Defendants analogize this case to <u>Love v.
Sanctuary Records Group, Ltd.</u>, 611 F.3d 601, 609 (9th
Cir. 2010), in which the Ninth Circuit utilized the
"purposeful direction" or "effects test" and held that
it had no personal jurisdiction over the defendant.
<u>Id.</u> 10:11-18.  However, Defendants appear to have
confused the Ninth Circuit's "purposeful availment"
analysis for contract cases with its "purposeful
direction" analysis for tort cases.  The purposeful
direction analysis is derived from the "effects" test
articulated in <u>Calder v. Jones</u>, 456 U.S. 783 (1984);
<u>See</u> <u>Wash Shoe Co.</u>, 704 F.3d at 673.  The effects test
requires a plaintiff to show that a defendant "(1)
committed an intentional act, (2) expressly aimed at
the forum state, (3) causing harm that the defendant
knows is likely to be suffered in the forum state."
<u>Wash. Shoe Co.</u>, 704 F.3d at 673 (quoting <u>Mavrix Photo</u>,
647 F.3d at 1228).  In contrast, as discussed above,
the purposeful availment analysis considers prior
negotiations and contemplated future consequences, the
terms of the contract, and the Parties' actual course
of dealing to determine whether the defendant
purposefully established minimum contacts within the
forum.  <u>Amini Innovation Corp.</u>, 497 F. Supp. 2d at 1103
(citing <u>Burger King</u>, 471 U.S. at 479).  As Defendants
erroneously apply the "purposeful direction" test to

1  the instant Action, which sounds primarily in contract,
2  the Court disregards Defendants' arguments on this
3  point.
4       Defendants also argue that Judge Dale Fischer's
5  opinion in <u>Urban Textile Inc. v. Conway Stores, Inc.</u>,
6  Case No. CV 14-2438 DSF (AJWx) (the "Urban Textile"
7  Action) in which Judge Fischer granted Defendant
8  Conway's motion to dismiss for lack of personal
9  jurisdiction, is controlling here.  Mot. 2:21-28.
10 However, the Court finds Defendants' argument
11 unavailing.  First, the Urban Textile Action involved
12 vastly different facts - the crux of plaintiff's case
13 was a claim of copyright infringement as to textile
14 designs utilized on garments sold by Defendant Conway.
15 Moreover, in reaching her decision, Judge Fischer
16 stated that "[t]he only contact Urban Textile points to
17 in support of jurisdiction over Conway is that Conway
18 was purchased by National - a California corporation."
19 Defs.' RJN at 6.  Judge Fischer noted that the
20 copyright infringement action in no way related to or
21 arose out of National's purchase of Conway.  In
22 contrast, here, Plaintiff provides evidence that the
23 Parties had a ten year relationship and that
24 Defendants' representatives frequently traveled to
25 California to negotiate transactions for the purchase
26 of goods from Plaintiff.  And, as discussed more fully
27 below, Plaintiff's claims here arise directly from
28                        18

1  Defendants' contacts with the forum.  Because Plaintiff
2  has pointed out Defendants' numerous contacts with
3  California, the Urban Textile Action is inapposite to
4  this Action.

5      In light of the above, the Court finds that
6  Defendants have purposefully availed themselves of the
7  privilege of conducting activities in California.

8      2.  <u>Plaintiff's Claims Arise out of or Result from</u>
9          <u>Defendants' Forum-related Activities</u>

10     The second factor addresses whether the claim
11 arises out of or results from Defendants' forum related
12 activities.  The Ninth Circuit uses the "but for" test
13 to assess this factor.  <u>Ballard</u>, 65 F.3d at 1500.  The
14 question is thus: but for Defendants' contacts with
15 California, would Plaintiff's claims against Defendants
16 have arisen?

17     Here, the Court finds that the claims in this
18 Action arise out of or relate to Defendants' forum
19 related activities.  The crux of Plaintiff's Complaint
20 is that the Parties entered into a series of contracts,
21 consisting of purchase orders, wherein Plaintiff sold
22 garments to Defendants and Defendants breached said
23 contracts by failing to pay for the sum owed.  Compl.
24 ¶¶ 16-18.  Plaintiff is suing on the same purchase
25 orders Defendants filled out and signed in California.
26 But for Defendants' affirmative conduct in traveling to
27 California to sign the purchase orders, Plaintiff's

28                          19

claims against Defendants would not have arisen.  In
other words, Plaintiff's claims arise out of the
contracts which were at least partially negotiated in
California.  See BCS & Assocs. Business Consulting
Servs., Inc. v. Essentia Health, No.
CV09-00814-PHX-MHM, 2010 WL 1253186, at *4 (D. Ariz.
Mar. 25, 2010) (holding that but for the defendant's
action in entering into a contract with the plaintiff,
the plaintiff would not have suffered the harm
alleged).  As such, the Court finds that Plaintiff's
claims arise out of or result from Defendants' forum-
related activities.

    3.   The Court's Exercise of Personal Jurisdiction
        Over Defendants is Reasonable

    Because Plaintiff establishes prongs one and two of
the specific jurisdiction test, Defendant "must come
forward with a compelling case that the exercise of
jurisdiction would not be reasonable." Boschetto, 539
F.3d at 1016 (internal quotation marks omitted).  The
Ninth Circuit has set forth seven factors to be
considered in determining whether the exercise of
jurisdiction over a nonresident defendant is
reasonable: (1) the extent to which the defendant
purposefully interjected itself into the affairs of the
forum state; (2) the burden on the defendant; (3)
conflicts of law between the forum and the defendant's
home jurisdiction; (4) the forum's interest in

adjudicating the dispute; (5) the most efficient
judicial resolution of the dispute; (6) the plaintiff's
interest in convenient and effective relief; and (7)
the existence of an alternative forum.  Roth, 942 F.2d
at 623.

The Court notes that Defendants' only attempt to
address the third prong appears in their Reply, in
which they make unsubstantiated allegations that (1)
most of the witnesses in this Action live on the East
Coast, and (2) all of Defendants' records are located
in New York.[4]  See Reply 5:4-17.  Defendants largely
ignore the other factors in weighing reasonableness.

In fact, as Plaintiff correctly points out, many of
the factors weigh in favor of a finding that the
exercise of personal jurisdiction over Defendants is
reasonable.  As for the first factor, the Court has
already concluded that Defendants purposefully availed
themselves of the privilege of conducting activities in
California.  See Roth, 942 F.2d at 623 (citing Sinatra
v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1199 (9th Cir.
1988)).  Moreover, California has an interest in
providing a means for its citizens to enforce contracts
that its citizens form with citizens of other states.
See Churchill Media LLC v. Moon Broad. Prosser, LLC,

_____

[4] With respect to Defendants' contention that all of its
records are located in New York, that consideration is no longer
weighed heavily given modern advances in communication and
transportation.  See Harris Rutsky, 328 F.3d at 1133.

1   No. 08-6330-TC, 2009 WL 2424080, at *4 (D. Or. Aug. 5,
2   2009).  And, if California is not a proper forum,
3   Plaintiff would be forced to litigate its claims in New
4   York or in another forum, presenting an obvious
5   inconvenience.  See Harris Rutsky, 328 F.3d at 1133.

6       In light of the above, the Court finds that
7   Defendants have failed to meet their burden of
8   presenting a compelling case that the exercise of
9   jurisdiction would not be reasonable.

10      Based on the foregoing reasons, the Court finds
11  that it can exercise specific jurisdiction over
12  Defendants and **DENIES** Defendants' Motion to Dismiss.

### IV. CONCLUSION

14      Based on the foregoing analysis, the Court **DENIES**
15  Defendants' Motion to Dismiss Complaint Pursuant to
16  Fec. R. Civ. P. 12(b)(2).

17

18  **IT IS SO ORDERED.**

19  DATED: August 21, 2014        RONALD S.W. LEW

20                                **HONORABLE RONALD S.W. LEW**
21                                Senior U.S. District Judge